NINETEENTH WARD BANK *vs.* FIRST NATIONAL BANK OF SOUTH WEYMOUTH.

Suffolk.   April 2, 1903. — June 19, 1903.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Bills and Notes.   Agency.*

Where a bank receives from another city for "collection and remittance" a note of one of its depositors payable at that bank and properly indorsed, having authority to pay notes of the maker out of his deposit when made payable there, and at the maturity of the note, after writing a check on a bank in the other city for remittance of the amount, stamps on the face of the note the word "Paid" with the date, cancels the note by perforation, and files it with the paid checks, this constitutes payment of the note as against an assignee for the benefit of creditors of the maker who gives notice to the bank by telephone of the assignment before the transaction has been entered on the permanent books of the bank and before the letter of remittance has been mailed.

CONTRACT, with counts for money had and received and upon an *insimul computassent*, to recover the amount of a note of A. O. Crawford and Company sent by the plaintiff to the defendant for collection.   Writ dated October 12, 1901.

The answer contained a general denial and also set up a special defence, alleging that A. O. Crawford and Company on the day of the maturity of the note made an assignment for the benefit of creditors including the deposit in the defendant bank, of which it was alleged that the defendant had notice before payment of the note was demanded.

In the Superior Court the case was tried before *Stevens*, J., without a jury.   The third instruction requested by the plaintiff, which is mentioned by the court, is as follows: "By taking the note off the files on the proper day for payment, cancelling it and making the proper and usual memorandum and entries through its cashier, the defendant bank did all

that was necessary to make a proper and valid presentation, payment and cancellation of said note, which cannot be afterwards revoked by the defendant."

The judge refused to give this and other instructions requested by the plaintiff. He found that the note had not been paid before notice of the assignment, and found for the defendant. The plaintiff filed exceptions which were disallowed because notice of filing was not given in time, and at the plaintiff's request the judge reported the case for determination by this court. If the plaintiff's requests for rulings should have been given, a new trial was to be ordered; otherwise, judgment was to be entered on the finding.

*W. A. Gaston, F. E. Snow & R. M. Saltonstall,* for the plaintiff.

*G. L. Wentworth,* for the defendant.

HAMMOND, J. The sole question is whether the note was paid before the defendant was notified of the failure and assignment of the makers. The judge found that it had not been paid. This finding must stand unless there was some error of law made at the trial.

The facts do not seem to be in dispute, and, stated in its lowest terms, the real question is whether they show as matter of law a payment of the note.

The note properly indorsed was sent several days before its maturity to the defendant for " collection and remittance." The makers were regular depositors at the defendant bank, and the note was upon its face made expressly payable there. On Monday, October 7, 1901, the time for the payment of the note had come. It was in the hands of the defendant as the indorsee and holder for collection, and the deposit of the makers then in the defendant's hands was more than sufficient to pay it.

It is well to see what were the duties and powers of the defendant at this time with reference to the note. The defendant as the indorsee and representative of the real owner of the note was the party entitled to demand and receive payment. Payment to it by the makers would be therefore a payment of the note. It had a further duty, which was to remit to the plaintiff the money received from the makers. It is obvious that this last act was no part of the payment of the note. It was an act

with which the makers had no concern, because if the note was paid by them to the defendant their liability was entirely discharged.

What was the relation of the defendant to the makers, and what could it do as their agent? It had in its vault money belonging to the makers and sufficient to pay the note which was expressly made payable at the bank. In England it is well settled that if an acceptor makes his acceptance payable at a particular bank it is tantamount to an order on his part to the bank to pay the bill to any person who by the law merchant is entitled to give a good discharge. See *Robarts* v. *Tucker*, 16 Q. B. 560, 578; Dan. Neg. Instr. (5th ed.) § 326 *a*, and cases therein cited. And although in this country there is some conflict, still it would seem that by the weight of authority a note payable at a bank where the maker keeps his account is equivalent to a check drawn by him upon that bank, so far at least as respects the power and duty of the bank to pay it. *Indig* v. *National City Bank*, 80 N. Y. 100, 106, *Wyman* v. *Fort Dearborn National Bank*, 181 Ill. 279, and other cases cited in Dan. Neg. Instr. (5th ed.) § 326 *a*. But whatever may be the rule in the absence of any directions to the bank from the maker, it appears from the evidence in this case that the defendant, in accordance with the understanding between it and these makers, had been in the habit of paying their notes when made payable at the bank, and in accordance with this course of dealing it must be assumed that the bank was directed by the makers to pay this note at maturity out of the deposit then standing therein to their credit. Indeed the defendant does not contend to the contrary. Since the cashier represented the bank, his act and purposes were those of the bank.

In this state of things the cashier, charged with the duties and invested with the powers of the defendant both as to the plaintiff and as to the makers respecting this note, proceeds on October 7, 1901, soon after the beginning of the day's business, to the performance of his task. He intends as agent of the makers to pay this note to his own bank, the indorsee and holder, and as such entitled to receive payment and discharge the note. He intends as cashier of his own bank to cancel and discharge the note when paid, and then as agent for the makers

to hold the paid note for them. After the note has been paid he intends to send the proceeds to the plaintiff. With these intentions he begins. The note is before him. He first draws on a bank in Boston his check as cashier of the defendant, payable to the order of the plaintiff for the amount of the proceeds of the note. It is to be observed that this is not the check of the makers nor is it made by the cashier as their agent, but in his capacity as agent of the defendant, and in the performance not of a duty owed by the makers but of a duty owed by the defendant to the plaintiff. It is not the check by which the note was paid because none was needed, but was the check by which the proceeds were to be transmitted by the defendant to the plaintiff. He then makes a memorandum of this check upon a block, stamps upon the face of the note " Paid Oct.     1901, First National Bank, So. Weymouth, Mass.," and perforates the note in three places. He then puts the note thus stamped and mutilated in the file with his checks, so that the proper record of the transaction may be entered at the end of the day upon the permanent books. So far he has gone when he is called to the telephone and notified that the makers have made an assignment for the benefit of their creditors, and he is requested by the assignee to hold the account. He replies that there is one (meaning this) note which he had paid or " made a check for it." Soon afterwards, at the request of the assignee, he withheld the check he had drawn and undertook to retrace his steps.

We are of opinion that prior to the call to the telephone the note had been paid by the makers to the defendant, and that the only remaining duty resting upon the defendant was to remit the proceeds to the plaintiff. As against the makers the defendant was the indorsee and holder of the note. As the agent of the makers it had been requested by them to pay it. No check was expected from the makers. The note itself was equivalent to a check. It stood exactly as though the makers owing the bank had delivered to it a check in payment. When the bank, through its cashier, wrote upon the face of the note in its own name as the indorsee and holder that it was paid, and perforated it and put it in the files as a thing paid, nothing more was to be done as to the payment. By those acts there had been set apart and appropriated to the payment of the note so much of the deposit

then standing to the credit of the makers as was sufficient for that purpose, just as though the makers had presented to the bank their check in payment of a claim due it from them.    It is true that the proper records were to be made upon the books, but the payment is effected by the acts and not by the record, and was valid even without records.    Consequently the question of the subsequent records is not material.    So far as respected the plaintiff, the defendant had received the money for the note and was bound to remit it to the plaintiff.

We think that under the circumstances disclosed in this case the third instruction requested should have been given.    In accordance with the terms of the report there is to be a.

*New trial.*