COSMOPOLITAN TRUST COMPANY *vs.* LEONARD WATCH COMPANY.

</div>

<div align="center">

Suffolk.    January 21, 1924. — May 19, 1924.

</div>

<div align="center">

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

</div>

*Bills and Notes*, Assignment, Payment. *Assignment. Trust Company*, In liquidation: overdue note in savings department and funds for payment in commercial department before commissioner took possession.

A valid assignment of a promissory note may be made by any words or acts which fairly indicate an intention to make the assignee the owner of the claim, the important thing being the act and the evidence of intent: formalities are not material.

As between the assignee of a promissory note and the debtor, it is not necessary that there should be shown any consideration for the assignment.

The validity of an assignment of a promissory note payable on demand does not depend upon the giving by the assignee of a notice to the maker.

At the trial of an action, brought in the name of a trust company, having a savings department, by the commissioner of banks, in possession of its property and business, against the maker of a promissory note payable on demand at the place of business of the trust company, it appeared that the note had been given by the defendant to the commercial department of the trust company. There was evidence tending to show that the note, identified by its proper number, had been transferred from the commercial to the savings department; that the commercial department had sent a notice calling for payment of interest on three quarterly dates following the date of the note; that the second and third of these, after payment by the defendant, were returned to the defendant stamped, " Paid, Savings Dept.; " that a subsequent notice demanding interest was marked as coming from the savings department; that a messenger from the defendant, interviewing the commercial department for the purpose of arranging payment of the note, was referred to the savings department, where he left a memorandum. The judge ordered a verdict for the plaintiff. *Held*, that the judge was justified in deciding as a matter of law that the note had been transferred and assigned by the commercial department to the savings department.

In the action above described, the defendant, in a declaration in set-off, contended that the note was payable on demand at the commercial department, that he had given directions to the commercial department to pay the note from a balance to his credit there, that the note should have been paid by the commercial department, that he had no notice of the transfer from the commercial to the savings department, and that the savings department as assignee took the note subject to the plaintiff's right in set-off to an application toward the payment of the note of his balance in the commercial department. It did not appear that the plaintiff had on deposit in the commercial department sufficient funds to pay the note until more than six months after the date of the assignment by the commercial department to the savings department. The note did not fall due until after the assignment. *Held,* that, in this case of conflict between the savings department and the commercial department of a trust company whose property and business were in the possession of the commissioner of banks for liquidation, the debtor could not be allowed to establish a claim to a set-off which did not exist at the time of the assignment; and that the question of notice was immaterial.

A contention by the defendant in the action above described, that by reason of G. L. c. 107, §§ 110, 209, he was discharged from liability either wholly or partially by reason of a failure of the savings department, for over twenty days after a direction from the defendant to pay the note from a deposit in the commercial department and before the bank passed into the possession of the commissioner of banks for liquidation, to present the note for payment at the commercial department where the maker had funds sufficient for its payment, was not sustained.

At the trial of the action above described, there was evidence tending to show that, on a notice from the trust company demanding the payment of interest, the defendant wrote, " Charge to account and send notes," and instructed its bookkeeper that as soon as its balance on deposit was sufficient he should send to the bank and have the note and interest charged to the account; that twenty-one days before the bank was closed by the commissioner there were deposits to the credit of the defendant in the commercial department more than sufficient to pay the note, and that a messenger of the defendant then called at the bank and presented at the window of the commercial department a memorandum and told the clerk there to charge the note to the defendant's account; that such clerk sent the messenger to the savings department, where he made the same request, leaving the memorandum, and was told, " All right." The judge ordered a verdict for the plaintiff for the full amount of the note and interest. *Held,* that

(1) Such an ordering of a verdict was a ruling in effect that the commercial department could not be found to be the agent of the savings department to collect the note, and such ruling was wrong;

(2) On the evidence, including evidence that on different occasions interest on the note had been charged against the commercial account after the transfer of the note to the savings department and that notices of interest were sent to the defendant by the commercial department, a finding was warranted that the commercial department

was authorized by the savings department to collect the note and that, although it had funds in its hands for that purpose, it had failed to do so;

(3) Notice to the savings department to charge the amount of the note to the balance of an account in the commercial department was notice to the commercial department: the trust company was a single entity with two departments, both of the same corporation;

(4) A verdict should not have been ordered for the plaintiff.

CONTRACT upon a promissory note for $15,000, dated February 16, 1920, and payable to the plaintiff on demand at the plaintiff's bank.    Writ dated July 15, 1921.

There was a declaration in set-off containing two counts, the first count being upon an account annexed for $21,872.66, the " amount on deposit in Commercial Department of said Cosmopolitan Trust Company," and the second count claiming that in the circumstances the defendant was " entitled under this its declaration in set-off to recover an amount equal to the amount due on said note, and to have said amount allowed in set-off against any amount recovered by the defendant in set-off in its declaration."

In the Superior Court, the action was tried before *Hall,* C.J. Material evidence is described in the opinion. At the close of the evidence, on motion by the plaintiff and against objections by the defendant, the Chief Justice ordered the jury to return a verdict for the plaintiff on the note for $15,000 and interest at seven per cent from October 1, 1920, and on the declaration in set-off to return a verdict for the trust company.    Accordingly, there was a verdict for the plaintiff in the sum of $17,642.50 in the main action and for the defendant in set-off.    The Leonard Watch Company alleged exceptions.

*L. A. Mayberry,* (*W. F. Levis* with him,) for the defendant.

*S. M. Child,* for the plaintiff.

CROSBY, J.    This is an action to recover on a note for $15,000, dated February 16, 1920, signed by the defendant by its president, and payable on demand to the order of the plaintiff at the plaintiff bank.    The note was given for a loan made to the defendant by the plaintiff from funds of its commercial department.    At the close of the evidence, the trial judge directed the jury to return a verdict for the plaintiff on the original note, and for the defendant in set-

off. To the direction of the court in each instance the defendant excepted. It also excepted to the admission of certain evidence offered at the trial.

On September 25, 1920, the commissioner of banks took possession of the property and business of the plaintiff trust company under St. 1910, c. 399, as amended, now G. L. c. 167, §§ 22, 36, and is prosecuting this action in the name of the plaintiff. The plaintiff contends that the note belonged originally to the commercial department, but afterwards, on February 28, 1920, was assigned to the savings department. This is denied by the defendant, which contends that it is entitled to set-off from its deposit in the commercial department a sum equal to the amount due on the note in payment thereof.

One O'Brien, called by the plaintiff, who was an employee of the bank for several years before it was closed, testified respecting certain entries, upon the books of the bank and upon a certain envelope, which tended to show that the note in question was transferred to the savings department on February 28, and that certain items of interest had been paid thereon. This evidence was admitted subject to the exception of the defendant. It is plain that it was admissible for the purpose of showing that the note had been transferred to the savings department, which was a material issue in the case. O'Brien testified that he had charge of the savings department and purchased the note from the commercial department, but that he did not know what was given for it; although he stated that value was so given, and that he would say that money was given. The jury could have disbelieved this testimony but, independently of it, the judge was warranted in assuming that the note had been transferred and assigned to the savings department, from the evidence as shown by the books of the bank and the documentary evidence contained upon the envelope, both of which had been rightly admitted in evidence. It appeared from the counter books and the entries on the envelope that the note was accurately described and bore the number 2872, which was its correct number, and the interest entries thereon and the counter books tallied accurately. While O'Brien testi-

fied that he did not have any directions to purchase the note from the commercial department, there was evidence that the executive committee of the savings department afterwards approved this loan.

It further appeared that a notice was sent by the commercial department calling for the payment of interest on the note on September 1, and that the amount had been charged to the defendant's account. The defendant's president, Whitney, testified that notices calling for interest were received on April 1, July 1, and September 1, and came from the commercial department; the first of these was stamped paid by the commercial department; the second, which also gave notice of an increase in the interest rate, was stamped " Paid, Savings Dept.; " and the third was similarly stamped. About October 2 a demand for interest was received marked as coming from the savings department. Whitney testified that on September 3 he considered paying the note and gave instructions to his bookkeeper to charge the amount thereof to the defendant's account in the commercial department, when there were sufficient funds in its deposit. The bookkeeper testified that she made a deposit on September 4 which made the balance (it being insufficient before that time) enough to pay the note. One Hall, an employee of the defendant, testified that he took the notice received September 1, bearing Whitney's memorandum, " charge to account," to the bank; that he went to the collection window on the commercial side and told a clerk there to charge the note and interest to the defendant's account; that he was sent to a window of the savings department where he made the same request, left the memorandum, and was told " All right." Whitney testified that he did not notice that the interest notices were stamped paid; that his usual practice was to charge notes falling due to the account and not draw checks for them. There was evidence tending to show that none of the defendant's officers or agents knew that the note had not been deducted from the commercial account until October 6, 1920, after the bank had been closed.

Upon the question, whether the judge erred in directing

a verdict for the plaintiff, it is necessary to consider whether there was sufficient evidence of a transfer of the note to the savings department independent of the testimony of O'Brien. As the note bore no indorsement, in the hands of the transferee it would be regarded as an assignment. *Barker* v. *Barth*, 192 Ill. 460, 471. A valid assignment may be made by any words or acts which fairly indicate an intention to make the assignee the owner of a claim. Williston, Contracts, § 424. *Southern Mutual Life Ins. Association* v. *Durdin*, 132 Ga. 495. *Christmas* v. *Russell*, 14 Wall. 69, 84. The important thing is the act and the evidence of intent; formalities are not material. Nor is it necessary that there should be any consideration where the question arises between the assignee and the debtor. *Cummings* v. *Morris*, 25 N. Y. 625. *Stone* v. *Frost*, 61 N. Y. 614. *Chase* v. *Dodge*, 111 Wis. 70. *Wardner, Bushnell & Glessner Co.* v. *Jack*, 82 Iowa, 435, 439. That no consideration is required to constitute a valid assignment is seen in cases of gifts by assignment of savings bank accounts. *Sheedy* v. *Roach*, 124 Mass. 472. *Davis* v. *Ney*, 125 Mass. 590. *Taft* v. *Bowker*, 132 Mass. 277. The uncertainty, apparent from O'Brien's testimony, as to what consideration was given by the savings department for the note, does not affect the validity of the assignment, as none was required. Nor did its validity depend upon giving notice to the debtor. *Thayer* v. *Daniels*, 113 Mass. 129. Apart from the testimony of O'Brien, it is manifest that the note was entered in the savings department books on February 28. This is corroborated by the entries on the envelope, which include an item of $30 as interest paid February 28, and the entries of interest payments until the closing of the bank; and it is plain that the note was in possession of the savings department after the bank was closed. This uncontrolled evidence clearly shows a transfer; and while O'Brien testified that he had no direction from the officers of the bank to purchase the note, it appears that his action was afterwards approved by the executive committee of the savings department, and there is nothing to show that it was not in accordance with the intention and understanding of the commercial depart-

ment.   Three notices received by the defendant calling for interest payments came from the commercial department. The first, however, was dated April 1 and could not affect the transfer of the note on February 28, as evidenced by the books of the bank and the entries on the envelope, which is the time when, if there was an assignment, it was made. Moreover, the interest payment of $112.50, due April 1, was entered on the envelope which was used by the savings department to keep its notes.   This is evidence that the commercial department was not acting for itself in sending the notices.   Such is the fair inference notwithstanding the testimony of O'Brien that it was not the practice of the commercial department to send notices for the savings department.   The trial judge was justified in deciding that as matter of law the note had been transferred and assigned.

Upon the question of notice to the defendant of the assignment, it is plain that the assignee takes subject to all the equities and defences available against the assignor at the date of the assignment. *Cosmopolitan Trust Co.* v. *Rosenbush,* 239 Mass. 305, 308. *Tremont Trust Co.* v. *C. H. Graham Furniture Co.* 244 Mass. 134, 137.   It follows that the savings department took as assignee subject to the defendant's rights against the commercial department at the time of the assignment.   If the note had remained in the commercial department, the defendant would have had a right of set-off, and if the set-off had existed at the time of the assignment, such set-off would have been valid against the savings department.   But in the case at bar there is no evidence of a deposit in the commercial department at the time of the assignment made on February 28. The deposit which the defendant seeks to set off was made in the early part of September, over six months after the assignment, and the claim of set-off against the commercial department did not become effective until the bank was closed on September 25.   If the defendant was entitled to notice of the transfer of the note before it could be deprived of its right of set-off, it would be a question for the jury upon the evidence whether the circumstances were such that the defendant was charged with notice of the assignment.

*Smith* v. *Brown*, 151 Mass. 338. *American Bridge Co. of New York* v. *Boston*, 202 Mass. 374. See *Tritt's Administrator* v. *Colwell's Administrator*, 31 Penn. St. 228, 235; *Anderson* v. *Van Alen*, 12 Johns. 343, 345. Williston, Contracts, § 437. Notice before September 25, when the bank was closed, is the only notice important on the question of set-off.

In *Cosmopolitan Trust Co.* v. *Rosenbush, supra,* it was held that, where a note had been transferred from the commercial to the savings department, while " the savings department held the note as assignee with the same authority and subject to the same obligations to its depositors as it would have held any commercial paper which it had purchased without indorsement . . . [still] As assignee the savings department took the note subject to all equities and defences existing between the commercial department and the defendants." It would seem therefore that the ordinary rules of assignment apply in the case at bar, including those relating to notice. G. L. c. 232, §§ 1, 4. Notwithstanding the general rule relating to assignments, yet in cases like the one at bar, where to allow a set-off will diminish the assets of the savings department, which it is the policy of the law to protect, the general rule respecting assignments is to be limited, and only to those will equities and defences existing at the time of the assignment be sustained. That principle is fully recognized in *Cosmopolitan Trust Co.* v. *Rosenbush, supra.* See also *Bailey* v. *Commissioner of Banks,* 244 Mass. 499, 501; *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 483.

The defendant was a depositor in the commercial department and is presumed to know the policy of the law in favor of savings department assets. Where, as here, the loss must fall on one of two innocent persons, either on the commercial depositor whose note was transferred, or on the savings department depositors who will lose by the depletion of the assets of that department if the defendant's set-off is allowed, it is the policy of the law that the loss must fall on the former. When, as in the present case and in the Rosenbush case, there is a conflict between the savings de-

partment and a commercial depositor, the general law of assignment is limited and no set-off can be allowed after the date of the assignment. Accordingly the question of notice becomes immaterial. It follows that, as the defendant was not entitled to notice of the transfer, in this respect the direction of a verdict was correct.

It is the contention of the defendant that, if there was evidence warranting a finding that the note had been transferred by assignment to the savings department, the latter was negligent in not presenting it for payment before the bank was closed; and that to the extent the defendant was thereby damaged it is released from liability. The ground for this contention is that, the note, being payable at a bank where the maker had an account, is governed by the same law as applies to a check by virtue of G. L. c. 107, § 110; and like a check must be presented within a reasonable time after its issue or the drawer will be discharged from liability thereon to the extent of the loss caused by the delay. G. L. c. 107, § 209. The defendant contends that the savings department was negligent in failing to present the note, having been instructed to do so after September 7, and in having neglected to carry out that instruction before the bank was closed on September 25. G. L. c. 107, § 110, reads: " Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon." We are unable to agree with this contention. The maker of a promissory note is primarily liable, while the drawer of a check is liable only in case the instrument is dishonored. G. L. c. 107, § 93, applies to the maker of a note but not to the drawer of a check. No duty rests upon the holder of a promissory note to present it for payment to charge the maker, presentment not being necessary to charge him as he is primarily liable. *Binghampton Pharmacy* v. *First National Bank*, 131 Tenn. 711; 2 A. L. R. 1377. In the case last cited, this precise question was decided: in referring to § 87 of the negotiable instruments act which is identical with G. L. c. 107, § 110, the court said, at page 717: " Presentment for payment is not necessary to charge the maker of a note.

No duty to one primarily liable on a note is breached by a failure to present the instrument for payment. Such an omission is not laches, and affords the maker no ground for complaint . . . . The duty of the holder of a note toward the maker cannot be assimilated to the duty of the holder of a check towards the drawer. In the first instance, the maker is primarily liable; in the latter, the drawer is only liable after dishonor." The rule so stated is in accordance with the decisions in other jurisdictions. *Williamsport Gas Co.* v. *Pinkerton,* 95 Penn. St. 62. *Adams* v. *Hackensack Improvement Commission,* 15 Vroom, 638. *Cheney* v. *Libby,* 134 U. S. 68. *State National Bank of St. Louis* v. *Hyatt,* 75 Ark. 170. It follows that the contention that the defendant is discharged from liability either wholly or partially by reason of the failure of the savings department to present the note for payment before the bank was closed, cannot be sustained.

The case of *Baldwin's Bank of Penn Yan* v. *Smith,* 215 N. Y. 76, contains some reasoning in conflict with this conclusion, but as it is stated in the opinion that it is unnecessary to decide the question, it cannot be considered as an authority opposed to the decision we have reached. The statement in *Nineteenth Ward Bank* v. *First National Bank of South Weymouth,* 184 Mass. 49, at page 52, that "The note itself was equivalent to a check," means simply that it was unnecessary to give a check in that case to obtain payment. That is a different issue from the one here considered, which is, Was prompt presentment for payment of the note necessary to avoid the discharge of the maker to the extent of loss occasioned by delay? It is therefore manifest that the defendant cannot complain that the plaintiff was negligent in failing to present the note promptly and that it is discharged thereby wholly or partially from liability. And this is true if we assume without deciding, that this demand note was subject to the same rules as those governing a time note at the date of maturity, by virtue of the request of Hall, made to the savings department early in September.

It remains to consider the defendant's contention that the note has been paid. It appears that the defendant's presi-

dent wrote in pencil on the interest notice " Charge to account and send notes," and instructed his bookkeeper that, as soon as the balance on deposit was sufficient, to send Hall to the bank and have the note and interest charged to the account. It also appears that on September 4 deposits were made more than sufficient to pay the note; that Hall went to the bank, presented the memorandum and told a clerk at the window of the commercial department to charge the note to the account; and that he was sent by that clerk to the savings department where he made the same request, left the memorandum and was told " All right." If there was a payment it must have resulted from this transaction. It is well settled that, where a note is payable at a given bank and there is a deposit of the maker in the bank sufficient to pay the note at maturity, the bank is the agent of the maker to pay; but that, if the note is not sent to the bank for collection, the latter is not the agent of the holder to accept payment. *State National Bank of St. Louis* v. *Hyatt, supra.* If, however, the note has been sent to the designated bank for collection, the bank becomes the agent of both the maker and the person entitled to payment. *Nineteenth Ward Bank* v. *First National Bank of South Weymouth, supra. Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.* 242 Mass. 181, 185. *Adams* v. *Hackensack Improvement Commission, supra. Ward* v. *Smith*, 7 Wall. 447. *Hills* v. *Place*, 48 N. Y. 520. *Williamsport Gas Co.* v. *Pinkerton, supra. Bank of Montreal* v. *Ingerson*, 105 Iowa, 349. *Baldwin's Bank of Penn Yan* v. *Smith, supra.*

If it be assumed that the savings department is treated as having the same relation to the commercial department as any holder would have with reference to this note, the question is: Was the judge justified in ruling, in effect, by directing a verdict, that the commercial department could not be found to be the agent of the savings department to collect the note? For, if the commercial department was an agent of both the maker and the savings department, the notice given as above described was equivalent to payment. *Nineteenth Ward Bank* v. *First National Bank of South Weymouth, supra. Baldwin's Bank of Penn Yan* v. *Smith,*

*supra.* We are of opinion that such a ruling could not properly have been made; it was a question of fact to be determined by the jury on the evidence, including the evidence that on different occasions interest on the note had been charged against the account after its transfer, and that notices for interest were sent to the defendant by the commercial department. If, notwithstanding O'Brien's testimony as to the usual practice, the jury found that the commercial department was authorized by the savings department to collect the note, and that although it had funds in its hands for that purpose it failed to do so, the defendant would be discharged from liability. We are of opinion that notice to the savings department to charge the amount of the note to the balance of account was notice to the commercial department; the plaintiff company is a single legal entity with two departments, both of the same corporation. *Commissioner of Banks, petitioner, in re Prudential Trust Co.* 240 Mass. 478, 483.

The question, whether the commercial department was authorized by the savings department to collect the note therefore should have been submitted to the jury. Failure to do so requires the entry of

*Exceptions sustained.*