The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, v. The H. N. Schuyler State Bank.
City of Pana, Appellant, v. Nora Molz et al., Appellees.
Missouri Rolling Mill Corporation of St. Louis, Missouri, Appellee, v. City of Pana, Appellant. The Millikin National Bank of Decatur et al., Appellees.

Gen. No. 8,839.

Opinion filed January 14, 1935.

J. H. FORNOFF, City Attorney, L. G. GRIFFITH and CHARLES W. FORNOFF, all of Pana, for appellant.

McMILLEN, McMILLEN & GARMAN, of Decatur, for appellee Millikin Nat. Bank.

MR. JUSTICE ALLABEN delivered the opinion of the court.

This case arose out of the insolvency of The H. N. Schuyler State Bank of Pana, Illinois, which was closed by the auditor of public accounts on February 6, 1930, and for which bank a receiver was appointed on April 21, 1930. At the time the bank closed the City of Pana had on deposit a total sum of $47,672.62, composed of a general fund deposit of $18,992.82, and a special assessment fund deposit in the amount of $28,679.80. After the closing of the bank the receiver held claims against the City of Pana totaling $33,-604.43.

When the Schuyler Bank closed Millikin National Bank of Decatur, Illinois, held as assignee of the Schuyler Bank four anticipation warrants of the City of Pana, issued in October, 1929, against taxes levied and to be collected in 1930, totaling $6,995, one of the anticipation warrants being against a water fund, a second against a fire fund, a third against a police fund, and the fourth against a salary fund. The Millikin Bank also held, as assignee of the Schuyler Bank, an evidence of indebtedness of the City of Pana to one W. F. Sell, in the amount of $6,211.39, issued by the City of Pana in October of 1929, for work done by Sell on the city reservoirs, assigned by Sell to the Schuyler Bank, which in turn assigned to H. N. Schuyler, who assigned it to the Millikin Bank. The Millikin Bank made a demand on the City of Pana for the payment of the warrant, and the Sell claim, for a total amount of $13,206.39, which the City of Pana refused to pay. On July 21, 1930, the City of Pana filed a claim against the receiver of the Schuyler Bank, for $47,672.63, the total of its deposits at the time the bank closed, and thereafter filed its amended interven-

ing petition in the circuit court of Christian county, praying that all of the claims held by the Schuyler Bank against the City of Pana, and the anticipation warrants and the Sell certificate held by the Millikin Bank, be offset against the total deposit of the City of Pana in the Schuyler Bank. The petition questioned the validity of the anticipation warrants held by the Millikin Bank, and asked that their validity be determined by the court. The receiver of the Schuyler Bank answered that he was willing to offset the amount of the Schuyler Bank claims against the City of Pana which he alleged to be $36,758.50 against the claim of the city for its deposits, and that a general claim would be allowed for such balance as remained due, but the receiver denied that the Schuyler Bank had any interest in the anticipation warrants or the Sell certificate, held by the Millikin Bank, and further denied that these claims could be made a proper offset in the adjudication of the city's claim against the Schuyler Bank.

The Millikin Bank answered the intervening petition of the City of Pana averring the validity of the tax anticipation warrants held by it, and of the Sell claim, and denying the right of the City of Pana to the relief prayed for in its intervening petition.

The Missouri Rolling Mill Corporation filed an intervening petition on May 18, 1931, claiming a portion of the moneys due Sell, by reason of a lien under section 23 of the Lien Act, Cahill's St. ch. 82, ¶ 23, for material furnished Sell and used by him in doing the work for the city. Upon a hearing the circuit court held: That the total of the claim of the Schuyler Bank held by it at the time it closed, or acquired thereafter, should be set off against the total funds on deposit in the Schuyler Bank by the City of Pana, and that a general claim should be allowed the City of Pana for the balance; that the validity of the anticipation warrants, and the Sell claim, held by the Milli-

kin Bank, were not proper matters to be determined in the action and dismissed the Millikin National Bank as a party to the proceedings, at the cost of the City of Pana.

The court also dismissed the intervening petition of the Missouri Rolling Mill Corporation at its cost. From this decree an appeal was taken to this court by the City of Pana.

The two questions involved in this case are: First: Whether the anticipation warrants held by the Millikin Bank are just and lawful claims against the City of Pana, and the second question: Whether the anticipation warrants and the Sell certificate, the validity of which last item is not in question in this appeal, are proper offsets of the City of Pana against the total funds which it had on deposit in the Schuyler Bank, and whether such offset is a proper matter to be adjudicated in this controversy. It is contended by appellant that the warrants held by the Millikin Bank were void because they were issued without any power to issue them for the particular purposes which caused their issue; that the statute authorizing the issuance of the warrants in anticipation of taxes levied (Cahill's St. ch. 146a, ¶ 2; ch. 146½, sec. 2, Smith-Hurd's Statutes 1933) provides that they may be issued to meet the ordinary and necessary expenses of the city, and building purposes, and for no other purpose; that the warrants in question were issued to refund other warrants, and that the city was not authorized to issue warrants to pay miscellaneous items of indebtedness, but such warrants could be issued solely for the purposes expressed in the statute. However, the resolution of the city council of October 14, 1929, which is in evidence in this case expressly found that the funds of the City of Pana for water, fire, police and salary, had become exhausted, and that it was necessary in order to conduct the current business of the city that funds therefor be procured; that war-

rants in anticipation of 1929 taxes be issued, and such warrants were described in the resolution. This court has no fault to find with the case of *People v. Coolley,* 146 Ill. App. 113, cited by the appellant for the proposition that warrants cannot be issued to pay for miscellaneous items of indebtedness, and attention is drawn to the fact that in the case cited the court held that the orders issued in anticipation of taxes were unauthorized because they were to be in payment of claims as they should be allowed, and consequently were not for definite indebtedness existing at the time, which it was necessary to meet, and the court said, in its opinion, "but when the board shall have determined that it has insufficient money on hand to defray necessary expenses of the county, it then becomes the duty of the county board to provide a fund for that purpose by issuing orders." Obviously in this case appellant cannot successfully contend that the items for which these warrants were issued were expenses which do not ordinarily arise in the administration of city government, or that they were miscellaneous expenses, and further we do not see how the argument of appellant that the funds in the accounts for which these warrants were issued were not actually exhausted on the last day of September, 1929, would lead to the conclusion that the council for the City of Pana, two weeks later when the resolution was adopted, may not have reasonably decided that such warrants were necessary for the current business of the city, as is indicated in their action of passing the resolution in question. If full faith and credit is not to be given to the resolutions of the city council in such matters, and such action construed favorably to the validity of warrants issued pursuant thereto, it would be virtually impossible for any city to issue and dispose of tax anticipation warrants without the greatest difficulty.

Appellant further contends that the City of Pana was without power to issue the warrants in question because they were issued to refund existing warrants, and relies upon the case of *Coquard v. Village of Oquawka,* 192 Ill. 355. In that case, in which the court held that the power of municipal corporations to issue negotiable bonds having the incidents of commercial paper, to take the place of a former issue cannot be implied merely from the power originally conferred authorizing such former issue, the court said: "It is not meant to be said that this provision of the constitution" (referring to Section 12, article 9, providing for the creation of municipal indebtedness) "was violated by the issue of the bonds in question, but only that it is thus indicated that it is against the policy of our laws that municipal corporations should, at their pleasure or convenience, exercise the mere implied power of issuing and putting upon the market negotiable securities, even though they are issued to refund an outstanding indebtedness of unquestioned validity." And the court further said: "But it so happened that no statute authorizing any such refunding and issuing of refunding bonds applied to the town or city of Oquawka, and we are of the opinion that such power cannot be implied merely from its ordinary powers as a municipal corporation, or from its power conferred by statute to issue the original bonds."

It appears to us that the warrants issued in this case were not issued under any "implied" authority, but under the express terms of the statute, and for an express purpose, and being once so issued it does not seem reasonable to argue that the city, having received value for the old warrants, should not have a right to substitute new warrants for the old ones, and thus reimburse the holders who had given value for the old warrants.

Appellant indicates in his brief that the warrants held by the Millikin Bank were issued for the purpose

of refunding the old warrants referred to in the testimony in this case, but reference to the City of Pana's Exhibits 6-A to 6-J, inclusive, and the Millikin Bank's Exhibits 2 to 5, inclusive, clearly indicates that what happened was that the City of Pana had outstanding at the time of the substitution of the warrants a $500 warrant for the fire fund, reduced to $240, five $1,000 warrants against the water fund, and one for $500 reduced to $455, two warrants issued against the police fund in the amount of $500 each, one of which had been reduced to $360, and one warrant against salary fund which had been reduced to $240.. These amounts tally exactly with the warrants which were issued on October 15, 1930, and as shown by the Millikin Bank's Exhibits 2 to 5, inclusive, and the new warrants expressly say on their face that they were issued against taxes levied in the year 1929, and therefore, obviously were not given for the purpose of ''refunding'' the old warrants but were in fact the same obligation as already existed in a different form, and it therefore follows that if the City of Pana originally had the authority to create this indebtedness which we have held that it did, then we see nothing that would militate against the authority of the city to change the form of their indebtedness at the request of the holder thereof so that as, in this instance, instead of holding six warrants against the water fund, totaling $5,455, there would be one warrant in the same amount.

Reference has been made in appellant's brief to the fact that the validity of the old warrants had been questioned. Examination of the City of Pana Exhibits 6-A to 6-J, inclusive, shows that the date indicated for which the taxes were levied on which the warrants were based was not completely filled out, and it might be reasonably assumed from this fact alone that the Schuyler Bank requested the issuance of new warrants that were not imperfect as to form, and pursuant to such request that the City of Pana did make the

substitution to correct the imperfections in the old warrants, and we do not think that the fact, if such it be, that the old warrants were imperfect in form, would in any way prevent the City of Pana from issuing new ones in proper form to take the place of the old ones. We are, therefore, impressed with the argument of counsel for appellee, wherein he says, "If cash had been received for the new warrants, and placed in the city treasury, and then used to reimburse the parties holding the old warrants, no objection could have been made. Certainly in equity it should be no defense against the new warrants that were exchanged for the old ones, instead of having been exchanged for cash, and the cash used to reimburse the holders of the old ones."

We now turn to the second question at issue which is the availability of the warrant held by the Millikin Bank, and owed by the City of Pana as offsets against the deposits of the city in the Schuyler Bank. If these warrants were negotiable instruments, and the Millikin Bank were the holder thereof in due course, then the argument of appellant that the city would have a right to a set-off because it had received no notice of the assignment before the closing of the Schuyler Bank would fail. However, Cahill's St. ch. 98, ¶ 21 (section 21, ch. 28, Smith-Hurd Revised Statutes of Illinois), describing a negotiable instrument, provides, among others, that one characteristic of such an instrument must be that it be payable on demand, or at a fixed or determinable future time. These warrants were not so payable, and since it has been held that whether an instrument is negotiable must be determined from the face of the instrument alone, *Atlas Coal & Coke Co. v. Kentucky River Coal Mining Co.*, 253 Ill. App. 475, and further since special assessment bonds payable to bearer but out of a special fund have been held to be non-negotiable, *Drouineau v. First Nat. Bank of Marion*, 244 Ill. App. 251, and since ob-

viously these warrants have the characteristic of being payable out of a special fund, they are not negotiable. Therefore, under the doctrine in *Barker v. Barth,* 192 Ill. 460, cited by appellant, which held that where a non-negotiable note was assigned, and the maker, without notice of such assignment, purchased the negotiable note of the payee, he was entitled in an action by the payee to the use of the assignee to set off the full amount of the payee's note, we are constrained to hold that the City of Pana had a right to set off the claim represented by the tax warrants held by the Millikin Bank against its general deposit in the Schuyler Bank, because there is nothing in the record to show, and no contention made, that the City of Pana had notice of the assignment of the warrants in question by the Schuyler Bank to the Millikin Bank, and further because such notice is specifically denied by the City of Pana.

Appellee contends that such a set-off cannot be made for the reason that the special assessment funds constituting part of the deposits in the Schuyler Bank cannot be used to pay the general expenses of the city directly or by set-off. All of the cases cited by appellee to sustain this proposition appear to be cases where the city has attempted to use one fund for another purpose. We do not feel that these cases are in point, but it must be borne in mind by the closing of the Schuyler Bank all of the funds which the City of Pana had on deposit, including the special assessment fund, were removed beyond its control, and as pointed out in the case of *People v. Joliet Trust & Savings Bank,* 275 Ill. App. 138, the status of the parties interested has changed and the character of their relation altered. The city was prevented from holding the funds for and paying them over to the special assessment bond holders, and the City of Pana should, in equity, have the full benefit of all of its deposits against the insolvent bank.

We do not think that the special assessment funds constituted the type of trust account referred to in the cases cited in the brief of appellee. The word "trust" in the case at bar is merely *descriptio personae*, that is, the designations used of the different funds being for the purpose of identification, and to prevent their being mixed while the bank was solvent, and able to pay its obligations.

We, therefore, believe that the trial court was incorrect in holding (1) that the validity of the anticipation warrants and the Sell claim were not proper matters to be determined in this action, and (2) that the set-off to which the City of Pana should be entitled should be limited to the amount of the claims held only by the Schuyler Bank at the time it closed. We further believe that the petition of the Missouri Rolling Mill Corporation should not have been dismissed, but that the validity of its claim should have been determined in the proceedings in the trial court as well.

This cause is, therefore, reversed and remanded for new trial with directions to the trial court upon a rehearing to allow the warrants held by the Millikin Bank to be offset against the deposits of the City of Pana in the Schuyler Bank, and with the further direction that the trial court consider the intervening petition of the Missouri Rolling Mill Corporation, and determine what, if any, interest that company has in the evidence of indebtedness of the City of Pana issued to W. F. Sell, and held by the Millikin Bank; and upon the determination of that question to allow to the City of Pana credit for all over the amount of interest the Rolling Mill may have in said evidence of indebtedness, if any, as an offset to the City of Pana against its deposits in the Schuyler Bank.

*Reversed and remanded with directions.*